# WILMERHALE

September 18, 2015

**David Sapir Lesser**

+1 212 230 8851 (t)
+1 212 230 8888 (f)
david.lesser@wilmerhale.com

**By ECF and Email**

Hon. Richard J. Sullivan
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007

Re: *Cinema Village Cinemart, Inc. v. Regal Entertainment Group, et al.*, 15-cv-05488

Dear Judge Sullivan:

We are counsel to Defendant Regal Entertainment Group (Regal) and write to request a pre-motion conference concerning Regal's anticipated motion to dismiss Plaintiff Cinema Village Cinemart, Inc.'s (CVC) Complaint under Federal Rule of Civil Procedure 12(b)(6).

CVC and Regal each operate a movie theatre in Forest Hills, Queens. (Compl. ¶¶ 1, 6, 21.) CVC operates the Cinemart Cinema (Cinemart) theatre (*id.* ¶ 19), and Regal operates the Midway Stadium 9 (Midway) theatre (*id.* ¶¶ 17, 20), about a mile away. CVC alleges that Regal has entered into "clearance" agreements with certain film distributors, under which the distributors allegedly have agreed that when they license a certain "blockbuster" film to the Regal Midway, they will not license that film to play simultaneously at the Cinemart. (*Id.* ¶¶ 14, 23-25.) CVC further alleges that Regal has "threatened and coerced" distributors into entering the purported clearance agreements through a practice called "circuit dealing." (*Id.* ¶¶ 29-30.) That is, CVC asserts that Regal has told distributors that if they do not grant Regal exclusive licenses to exhibit particular films at the Midway, Regal will retaliate by reducing the number of screens that it devotes to their films in other areas where Regal operates the only theatre. (*Id.*)

CVC brings three causes of action: violation of the Sherman Act (15 U.S.C. § 1), violation of the Donnelly Act (N.Y. General Business Law §§ 340-370), and common law intentional interference with prospective economic advantage. For the following reasons, the Complaint fails to state any claim for relief and should be dismissed under Rule 12(b)(6).

*First*, CVC's Section 1 claim fails because it has not alleged facts suggesting clearance *agreements* between Regal and film distributors, rather than unilateral decisions by the distributors not to license CVC to exhibit a particular film at the Cinemart when that film is showing at the Regal Midway.[1] CVC does not allege even the most basic facts about the

---

[1] *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (complaint "must contain 'enough factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (brackets in original))).

Hon. Richard J. Sullivan
September 18, 2015
Page 2

WILMERHALE

supposed clearance agreements, such as when, where, or by whom such agreements purportedly were entered, or which specific films allegedly were affected by the clearances.[2] Instead, CVC alleges only that Regal decided not to play *American Sniper* at the Midway while the film was playing at the Cinemart, and that Warner Bros. later "backed off" a supposed commitment to license *Jupiter Ascending* to play there. But these allegations do not plausibly describe clearance *agreements*, as opposed to: (a) Regal's unilateral business decision not to play a film at the Midway theatre that would simultaneously play at the nearby Cinemart theatre (and instead chose to use its screen space for another film), and (b) distributors making independent decisions about whether to license films to play at the Midway or the Cinemart taking into account Regal's position on how it would book movies at the Midway. (Compl. ¶ 24.) Such unilateral conduct falls outside the scope of Section 1.[3] Moreover, far from suggesting that Regal entered clearance agreements with distributors, other allegations in the Complaint make clear why a distributor would unilaterally choose to license blockbuster films only to the Midway and not also to the nearby Cinemart: The Midway is a modern, stadium-seating theatre (while the Cinemart has old-fashioned sloped floors), with more than twice as many auditoria as the Cinemart, and is on a main thoroughfare rather than a side street. (*Id.* ¶¶ 17, 19, 21.) Because CVC has not alleged plausibly any agreement between Regal and any film distributor, its Section 1 claim fails.

*Second*, CVC fails to allege a cognizable geographic market in which to assess the competitive effects of Regal's alleged conduct.[4] CVC asserts a "market" of just Forests Hills (*id.* ¶ 20) but fails to allege any facts plausibly suggesting that theatres in Forest Hills do not compete for the patronage of moviegoers with nearby theatres outside the neighborhood limits.[5] Indeed, CVC's allegations that people can easily come in and out of Forest Hills "by subway, rail, bus and car" and that the actual bounds for the theatres Queens moviegoers' typically attend is the borough of Queens contradict CVC's posited Forest Hills-only market. (*Id.* ¶ 21.)

*Third*, CVC fails to allege any facts showing market-wide harm to competition as a result of any

---

[2] *See Twombly*, 550 U.S. at 555, 557 (conclusory allegations are insufficient).

[3] *See Worldhomecenter.com, Inc. v. KWC Am., Inc.*, No. 10-7781, 2011 WL 4352390, at *6 (S.D.N.Y. Sept. 15, 2011).

[4] *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008) (dismissal appropriate where "the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products").

[5] *Concord Assocs., L.P. v. Entm't Props. Trust*, No. 12-1667, 2014 WL 1396524, at *17 (S.D.N.Y. Apr. 9, 2014) (dismissing Sherman Act claim that "alleges no plausible fact explaining why other areas within convenient transit of the population center . . . should be excluded" (internal quotation marks omitted)); *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 483 (S.D.N.Y. 2001) (dismissing Sherman Act claim where plaintiffs had "not provided any facts to support the conclusion that the effective area of competition should be drawn so narrowly").

Hon. Richard J. Sullivan
September 18, 2015
Page 3

**WILMERHALE**

alleged clearance agreements.[6] This Court and many others have repeatedly upheld as lawful clearances in circumstances where two nearby theaters—such as Regal's Midway and CVC's Cinemart—directly compete for movie patrons.[7] This is consistent with the precedent in this Circuit that exclusive distribution arrangements—*i.e.*, an agreement that only one dealer will distribute a supplier's product in a given area—are "presumptively legal."[8] At most, CVC alleges that *it* has suffered harm from not winning the right to show certain of the many first-run films that distributors release every week.[9] But Cinemart alleges no facts plausibly suggesting that *moviegoers* are harmed by the fact that the Cinemart and the Midway offer different films that appeal to different moviegoers, rather than showing identical films at the same time. CVC's sole attempt to show that the supposed clearance agreements are anticompetitive is to assert that they are the product of "circuit dealing," rather than normal competitive interactions. CVC, however, alleges no facts suggesting circuit dealing and instead rests its claim on nothing but bare assertions, unattributed hearsay, and rank innuendo.

*Finally*, CVC's Donnelly Act claim fails for the same reasons as its Sherman Act claim. And its tortious interference claim necessarily falls with its antitrust claims because it does not allege any basis for that claim other than the supposed antitrust violations.[10]

For the foregoing reasons, Regal requests a pre-motion conference concerning its anticipated motion to dismiss.

Respectfully submitted,

David Lesser

---

[6] *See E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30 (2d Cir. 2006).

[7] *See Theee Movies of Tarzana v. Pac. Theaters Inc.*, 828 F.2d 1395, 1399 (9th Cir. 1987); *see also Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, No. 03-1895, 2007 WL 39301, at *14 – 16 (S.D.N.Y. Jan. 8, 2007) (alleged clearance involving Regal's Union Square theatre reasonable where the Union Square and the plaintiff's theatre were in substantial competition).

[8] *E&L Consulting*, 472 F.3d at 30.

[9] *Spinelli v. Nat'l Football League*, No. 13-7398, 2015 WL 1433370, at *26 (S.D.N.Y. Mar. 27, 2015) ("[E]xclusive agreements do not harm competition when there is competition to obtain the exclusive contract."); *see also Theee Movies of Tarzana*, 828 F.2d at 1400 (no injury to competition where plaintiff's loss of business "was not due to disruption in competition caused by . . . clearances; rather, it was due to [plaintiff's] inability or unwillingness to compete").

[10] *See, e.g., Blutreich v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 13-8583, 2015 WL 1515255, at *8 (S.D.N.Y. Apr. 2, 2015) (dismissing tortious interference with prospective economic advantage claim where plaintiff failed to allege any underlying wrongful conduct).