

**Blecher Collins
Pepperman & Joye**

A Professional Corporation
ATTORNEYS AT LAW

515 SOUTH FIGUEROA STREET, SUITE 1750
LOS ANGELES, CALIFORNIA 90071-3334
T. 213.622.4222 • F. 213.689.1944
WWW.BLECHERCOLLINS.COM

MBLECHER@BLECHERCOLLINS.COM

September 21, 2015

Hon. Richard J. Sullivan
United States District Court, Southern District
of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007

      Re:    <u>Cinemart Village Cinemart, Inc. v. Regal Entertainment Group, et al. 15-cv-05488</u>

Dear Judge Sullivan:

We are counsel to Plaintiff Cinemart Village Cinemart, Inc. ("Cinemart") and write in Response to Defendant Regal Entertainment Group's ("Regal") letter of September 18, 2015 requesting a pre-motion conference concerning their motion to dismiss Cinemart's complaint under Fed. R. Civ. P. 12(b)(6).

Regal severely misconstrues Cinemart's complaint and advances arguments that are premature at this stage of the case. Cinemart respectfully submits that all of its claims have been sufficiently plead and therefore, Regal's motion to dismiss should be disallowed.

Regal's attempt to invoke *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) ("*Twombly*") is without merit. That claim involved a multi-party conspiracy. By contrast, the violation at issue in this case is a series of vertical exclusivity contracts with film distributors that Regal obtained to foreclose competition for first-run films in Forest Hills, New York. Put another way, the "clearance" contracts themselves are the predicate "agreement" for both the Sherman Act and Donnelly Act claims.[1] And, to that end, Cinemart alleges that representatives of Warner Bros. and Sony refused to provide Cinemart first-run films as a result of Regal entering into clearance agreements with them and other distributors. (See Complaint ¶¶ 23-27.) Based on these statements by Warner Bros. and Sony, it appears eminently plausible that Lionsgate, Paramount, and Universal—who also refuse to license the bulk of their respective first-run films to Cinemart—similarly consented to Regal's exclusivity demands. As the Third Circuit noted, "If a complaint includes non-conclusory allegations of direct evidence of an agreement, a court need go no further on the question whether an agreement has been adequately pled." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99 (3d Cir. 2010).

Accordingly, *Twombly,* which questions whether a claim under the Sherman Act is <u>plausible</u>, is inapposite as Cinemart has alleged a contract and/or combination sufficient to overcome a motion to dismiss.

---

[1] The Sherman Act forbids a "contract" which unreasonably restrains trade, in addition to combinations and conspiracies. 15 U.S.C. § 1.

 **Blecher Collins Pepperman & Joye**
A Professional Corporation
ATTORNEYS AT LAW

Hon. Richard J. Sullivan
September 21, 2015
Page 2

Defendants argument regarding the failure to allege a cognizable geographic market to assess the competitive effects of Regal's alleged conduct is both flawed and premature. First, Cinemart has sufficiently pleaded a viable geographic market. (See Complaint at ¶¶ 20-21.) Moreover, "[b]ecause market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) *citing  Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir.2001) ("Market definition is a highly fact-based analysis that generally requires discovery.") (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 482 (1992)); *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir.1998) (noting that "courts are hesitant to dismiss antitrust actions before the parties have had an opportunity for discovery"); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir.1997) (explaining that "in most cases, proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers") (citing *Eastman Kodak*, 504 U.S. at 482); cf. *Hayden Publ'g Co. v. Cox Broad. Corp.*, 730 F.2d 64, 70 n. 8 (2d Cir.1984) ("The conclusion that genuine issues of material fact preclude a finding as to [the] relevant market as a matter of law is not unexpected. It frequently has been observed that 'a pronouncement as to market definition is not one of law, but of fact ....' ") (citations and alterations omitted).  Accordingly, Regal's arguments in this regard are not appropriate on a motion to dismiss and should be denied.

Regal's position regarding harm to competition must fail for the same reasons.  The issue of whether two theaters are in substantial competition and whether the clearance restrains competition are quintessential fact issues not ripe for a motion to dismiss.  The Defendant's own citation supports this position. *See Reading Inter., Inc. v. Oaktree Capital Management, LLC,* 317 F.Supp.2d 301, 321 (2003) ("The essentially factual disputes about what the appropriate 'brand is for purposes of this analysis, or about the ultimate effects of these agreements on competition, cannot be resolved on a motion to dismiss.'  As the Ninth Circuit has noted, '[d]etermining whether a particular restraint is reasonable requires a thorough investigation of the industry at issue and a balancing of the arrangement's positive and negative effects on competition.'" quoting *Theee Movies of Tarzana v. Pacific Theaters, Inc.,* 828 F.2d 1395, 1399 (9th Cir. 1987).)

We also respectfully call to the Court's attention this discussion of Judge Ross in the Northern District of Georgia in *Cobb Theatres v. AMC Entertainment,* Case No. E-14-cv-00182-ELR:

> "Although Defendants are correct that courts generally find clearance agreements reasonable when theatres are in substantial competition, the *Paramount Pictures* court set forth several other factors that are relevant to the reasonableness inquiry. 334 U.S. at 145-46.  Further, as the Eleventh Circuit has noted, 'in order to consider a rule of reason claim based on a vertical restraint . . . a court must conduct a 'systematic comparison' of the negative



**Blecher Collins
Pepperman & Joye**
A Professional Corporation
ATTORNEYS AT LAW

Hon. Richard J. Sullivan
September 21, 2015
Page 3

> effects of the restraint on competition and compare with the positive effects on competition stemming from the restrain.' *Maris Distrib. Co. v. Anhueser-Bush, Inc.*, 302 F.3d 1207, 1213 (11th Cir. 2002) (citing *Graphic Prods. Distribs. v. Itek Corp.*, 717 F.2d 1560, 1571 (11th Cir. 1983)).
>
> Here, the Court concludes Plaintiffs have alleged sufficient facts to suggest the clearances in question are unreasonable. Accordingly, dismissal of Plaintiffs' exclusive dealing claim is not justifiable on this ground. Although Defendants may prove after discovery that the clearances at issue were justified. Plaintiffs' allegations are sufficient to withstand a motion to dismiss."

[Slip Opinion at pp. 20-21]

Because Cinemart has sufficiently stated a claim under the Sherman Act, its claim under the Donnelly Act must also be sustained. Likewise, its claims for tortious interference must also be sustained as the complaint sufficiently alleges independent unlawful conduct based upon the Sherman and Donnelly Act claims.

If the Court finds that Cinemart's Complaint lacks the requisite factual specificity, Cinemart respectfully requests leave to amend. See *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir. 1991) ("As a matter of procedure, when a complaint is dismissed pursuant to 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted." citing *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988).) "Rule 15(a) provides that leave to amend 'shall be freely given when justice so requires' . . . and it is rare that such leave should be denied. . . especially when there has been no prior amendment." *Id.* (internal citations omitted.)

Respectfully submitted,

Maxwell M. Blecher

77795.1